Mark A. Ellingsen, ISB No. 4720
WITHERSPOON BRAJCICH MCPHEE, PLLC
The Spokesman-Review Building
608 Northwest Boulevard, Suite 402
Coeur d'Alene, Idaho 83814
Telephone: (208) 927-4001
Facsimile: (509) 624-6441
Email: mellingsen@workwith.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GEORGE ULLRICH and JAMI STURGES-ULLRICH, husband and wife; VOLITION, LLC, and Idaho limited liability company; PROLOGUE, LLC, an Idaho limited liability company; ODYSSEY, LLC, an Idaho limited liability company; NORTHWEST PSYCHIATRIC ASSOCIATES, P.A., an Idaho professional service corporation; STURGES PROPERTIES, L.L.C., an Idaho limited liability company; PREFACE, L.L.C., an Idaho limited liability company; and ATTICUS PROPERTIES, LLC, an Idaho limited liability company, <br><br> Plaintiffs, <br><br> v. <br><br> PARR BROWN GEE & LOVELESS, a Utah professional corporation, <br><br> Defendant. | Case No. <br><br> PLAINTIFFS' COMPLAINT AND DEMAND FOR JURY TRIAL |

COMES NOW the above-named Plaintiffs, by and through their attorney of record, Mark A. Ellingsen, of the firm Witherspoon Brajcich McPhee, PLLC, and for their causes of action against the above-named Defendant, complain and allege as follows:

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–1

**PARTIES & JURISDICTION**

1.      Plaintiffs George Ullrich and Jami Sturges-Ullrich (the "Ullrichs") are husband and wife and formed a marital community under the laws of the State of Idaho and have resided in Kootenai County, Idaho. Plaintiffs George Ullrich and Jami Sturges-Ullrich are citizens of the state of Idaho. The Ullrichs are duly authorized to act on behalf of the above-named Plaintiff business entities (hereinafter "Plaintiff Entities").

2.      Plaintiff Volition, LLC, is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

3.      Plaintiff Prologue, LLC, is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

4.      Plaintiff Odyssey, LLC, is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

5.      Plaintiff Northwest Psychiatric Associates, P.A., is an Idaho professional service corporation incorporated under the laws of the state of Idaho with its principal place of business located in Coeur d'Alene, Idaho.

6.      Plaintiff Sturges Properties, L.L.C., is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

7.      Plaintiff Preface, L.L.C., is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

8.      Plaintiff Atticus Properties, LLC, is an Idaho limited liability company.  Its members are George Ullrich and Jami Sturges-Ullrich, who are citizens of the state of Idaho.

9.      Defendant Parr Brown Gee & Loveless (hereinafter referred to as "Defendant") is a Utah professional service corporation incorporated under the laws of the state of Utah with its

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–2

principal place of business in Salt Lake City, Utah. At all times material, Douglas Waddoups was an attorney employed by Defendant who was duly authorized to act on Defendant's behalf in providing legal services to individuals and businesses.

10.    Upon information and belief, the above-named Plaintiffs allege that the amount in controversy exceeds $75,000.00.

11.    This Court has diversity jurisdiction under 28 U.S.C. § 1332.

## **FACTUAL ALLEGATIONS**

12.    On or about April 2019, the Ullrichs contacted attorney Douglas Waddoups of Defendant to assist with the sale of their business, Innercept, LLC ("Innercept")—a business that provided residential treatment programs for youths and young adults.

13.    The Defendant, by and through attorney Douglas Waddoups, represented to the Ullrichs that there were attorneys at Defendant who would provide legal services to the Ullrichs that were competent in this area of law and were licensed to practice law in the State of Idaho and familiar with Idaho law in order to provide advice and assist with all aspects of the sale of the business.

14.    The Engagement Letter from the Defendant, attached hereto as Exhibit A and incorporated herein by reference, stated that the Defendant "intend[ed] to provide quality legal services in an efficient, economical manner."

15.    Based upon the representations made to the Ullrichs by the Defendant, by and through attorney Douglas Waddoups, the Ullrichs and the Plaintiff Entities (collectively the "Plaintiffs") entered into a contract with Defendant wherein the Plaintiffs retained the Defendant law firm to represent them and provide legal services for the sale of Innercept's business located in the State of Idaho.

16.     As part of the sale of Innercept which was negotiated, the attorneys for the prospective buyer of Innercept drafted up a series of documents pertaining to the proposed sale including Settlement Agreement, Redemption Agreement, Purchase Agreement, and Master Lease Agreement.  Under the terms of the negotiated sale, the Plaintiffs were to maintain ownership of the various residential and commercial properties utilized by Innercept and lease those properties back to Innercept for the operation of the residential treatment programs after the sale.

17.     To accomplish this, the attorneys for the prospective buyer drafted a Master Lease Agreement containing the proposed terms and conditions related to the lease of the Plaintiffs' residential properties to Innercept as the tenant with the Ullrichs and the Plaintiff Entities as the landlord.

18.     As part of the legal services provided by Defendant to Plaintiffs, attorney Douglas Waddoups, Paul Barrus, and Emma Balls reviewed the terms and conditions of this proposed Master Lease Agreement and recommended that Plaintiffs execute the Master Lease Agreement— despite the fact that the Master Lease Agreement omitted several material provisions that are standard and necessary to a property lease agreement in Idaho and which are routinely included within a lease to protect a landlord's rights to access its property during the leasehold term in order to make repairs to maintain and preserve the leasehold premises.

19.     The Master Lease Agreement which Defendant recommended Plaintiffs execute ultimately failed to provide terms which adequately protected Plaintiffs' interest in the residential property, including, but not necessarily limited to, failing to provide terms which adequately reserved rights to the Plaintiffs to enter and inspect the residential properties and make timely repairs, failing to provide adequate terms which protected the Plaintiffs regarding unauthorized

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–4

tenant alterations to the properties, and failing to provide adequate terms which would require the tenant to regularly and properly perform maintenance to maintain the value of the properties, among other things.

20.     Plaintiffs allege that despite the lack of adequate terms contained within the Master Lease Agreement which would provide Plaintiffs access to the properties, the Defendant informed the Plaintiffs that they, as landlords, under Idaho law, had the right to enter, inspect, and repair the properties when needed.  Furthermore, Plaintiffs had requested Defendant to ensure that the Master Lease Agreement would only encumber the subject properties for up to five years, yet the Master Lease Agreement which Defendant recommended that Plaintiffs execute was inconsistent with this request and ultimately the Master Lease Agreement which was executed effectively encumbered the subject property beyond five years.

21.     Acting upon the Defendant's legal advice, the Ullrichs entered a number of the residential properties included in the Master Lease Agreement in January 2022 to inspect and assess ongoing repairs, and those needed to one of the residential properties, after the sale of Innercept had been completed and the Master Lease Agreement had become effective.

22.     Subsequently, in April 2022, Innercept sued the Plaintiffs for trespass related to their entry to inspect and repair the residential properties alleging that Plaintiffs did not have such a right pursuant to the Master Lease Agreement.  As a result, Plaintiffs have incurred attorney's fees and costs to date defending this suit which would have otherwise been avoided had adequate access terms been included in the Master Lease Agreement.  Furthermore, Innercept has continued to bar Plaintiffs' efforts to inspect and repair the residential properties, hired unlicensed subcontractors which have conducted repair work which has damaged the subject properties, and has blocked insurance inspections required for Plaintiffs to maintain full and uninterrupted

insurance coverage for the subject properties and which has resulted in costly downgrades in insurance.

23.     Ultimately, contrary to the Defendant's representations that Defendant had an attorney that was properly licensed in Idaho to represent Plaintiffs' interest in the subject sale, Defendant did not have an attorney properly licensed in Idaho and did not utilize an attorney who was either licensed to practice law in the State of Idaho and/or knowledgeable about Idaho law, particularly Idaho landlord-tenant law, in the negotiations and ultimate advice that Defendant gave to Plaintiff that Plaintiff execute the Master Lease Agreement as part of the sale of their business.

24.     Moreover, since the Master Lease Agreement did not reserve rights of the landlord to enter, inspect, or perform maintenance on the properties, there has been ongoing damage to the residential properties, causing them to diminish in value.

25.     The Plaintiffs have attempted to sell some of the residential properties included in the Master Lease Agreement, but are unable to find a buyer that is willing to purchase a property subject to the constraints of the Master Lease Agreement which fails to adequately protect the properties and landlord rights and which fails to adequately provide Plaintiffs the right to sell the properties.

## FIRST CAUSE OF ACTION

## LEGAL MALPRACTICE/NEGLIGENCE

26.     Plaintiffs reallege Paragraphs 1 through 25 above as if fully restated herein.

27.     Plaintiffs and the Defendant formed an attorney-client relationship when the Defendant agreed to represent Plaintiffs in the sale of Innercept and the Plaintiffs retained the

Defendant law firm to do so. This attorney-client relationship is further established by the Engagement Letter attached hereto as Exhibit A.

28.     The Defendant law firm had a professional duty to competently represent Plaintiffs and protect Plaintiffs' interests in the sale of Innercept and the corresponding Master Lease Agreement and in conformity with applicable professional standards. Furthermore, due to the circumstances related to the sale of Plaintiffs' Idaho business, Defendant had a legal duty to provide Plaintiffs with an attorney who was licensed to practice law under the laws of the State of Idaho in the sale of their business and who was knowledgeable about Idaho law related to the various aspects involved in the sale of Plaintiffs' business.

29.     The Defendant law firm breached this duty to the Plaintiffs by failing to provide Plaintiffs with an attorney who was licensed and knowledgeable about Idaho law. Furthermore, Defendant breached this duty to Plaintiff by failing to adequately represent Plaintiffs' interest in the subject sale and recommending that Plaintiffs execute a Master Lease Agreement which failed to include several material provisions in the Master Lease Agreement to adequately protect Plaintiffs, Plaintiffs' properties, and their rights as landlords.

30.     The Defendant's breach of its duty to competently represent Plaintiffs proximately caused damages suffered by the Plaintiffs in the form of damages which Plaintiffs have suffered to their residential properties due to an inability to adequately inspect and repair the residential properties, attorney's fees which Plaintiffs paid to Defendant for legal advice which was inadequate and which Defendant was not allowed to accept due to the unauthorized practice of law, and attorneys' fees and costs Plaintiffs have incurred in the defense of the lawsuit by Innercept, among other things.

31. Plaintiffs further allege that the Defendant's conduct as described herein was oppressive, fraudulent, wanton, malicious, and outrageous against Plaintiffs' rights and the consequences that Plaintiffs might suffer. Therefore, notice is hereby given that Plaintiffs intend to amend their pleadings to include a prayer for relief seeking punitive damages in the manner allowed by Idaho Code §§ 6-1604.

## SECOND CAUSE OF ACTION

## BREACH OF CONTRACT

32. Plaintiffs reallege Paragraphs 1 through 31 above as if fully restated herein.

33. Plaintiffs entered into a contract with the Defendant law firm to represent them in the sale of Innercept and the corresponding Master Lease Agreement.

34. Pursuant to the contract and the representations made by the Defendant to Plaintiffs, the Defendant law firm agreed to competently represent the Plaintiffs in the sale of their business and corresponding lease agreement in conformity with applicable professional standards. Defendant also agreed to provide Plaintiffs with an attorney knowledgeable about Idaho law and who was licensed to practice law in the State of Idaho.

35. Defendant breached the contract it had with Plaintiffs by failing to competently represent the Plaintiffs as previously described herein. Defendant breached the contract it had with Plaintiffs by failing to provide Plaintiffs with an attorney who was licensed to practice law in the State of Idaho and who was knowledgeable about Idaho law in relation to the sale of Plaintiffs' business.

36. The Defendant's breach of its contract with Plaintiffs has proximately caused damages suffered by the Plaintiffs in the form of damages which Plaintiffs have suffered to their residential properties due to an inability to adequately inspect and repair the residential properties,

attorney's fees which were paid to Defendant for legal advice which was inadequate and which Defendant was not allowed to accept due to its unauthorized practice of law, and attorneys' fees and costs Plaintiffs have incurred in the defense of the lawsuit by Innercept, among other things. The amount of damages which Plaintiffs have suffered is in excess of $75,000 and in an amount to be proven at the time of trial.

37.     Plaintiffs further allege that the Defendant's conduct as described herein was oppressive, fraudulent, wanton, malicious, and outrageous against Plaintiffs' rights and the consequences that Plaintiffs might suffer. Therefore, notice is hereby given that Plaintiffs intend to amend their pleadings to include a prayer for relief seeking punitive damages in the manner allowed by Idaho Code §§ 6-1604.

## THIRD CAUSE OF ACTION

## BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING

38.     Plaintiffs reallege Paragraphs 1 through 37 above as if fully restated herein.

39.     In every contract, including the one for legal services between Plaintiffs and Defendant, there is an implied covenant of good faith and fair dealing.

40.     The Defendant had a duty to abide by the implied covenant of good faith and fair dealing in all of its interactions and transactions with the Plaintiffs pursuant to the contract.

41.     The Defendant breached this implied covenant of good faith and fair dealing by making misrepresentations to the Plaintiff, including but not limited to, the representation that the Defendant was properly licensed and competent to practice law in the State of Idaho. The Defendant breached its duty to Plaintiffs by failing to competently represent the Plaintiffs in the sale of their business and corresponding lease agreement in conformity with applicable professional standards.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–9

42.     As a direct and proximate cause of the Defendant's breach of this implied covenant of good faith and fair dealing, the Plaintiffs have suffered damages, including but not limited to, additional attorneys' fees, costs, and time in defending against Innercept's lawsuit for trespass.

43.     The Defendant's breach of this duty of good faith and fair dealing with Plaintiffs has proximately caused damages suffered by the Plaintiffs in the form of damages which Plaintiffs have suffered to their residential properties due to an inability to adequately inspect and repair the residential properties, attorney's fees which paid to Defendants for legal advice which was inadequate and which Defendants were not allowed to accept due to their unauthorized practice of law, and attorneys' fees and costs Plaintiffs have incurred in the defense of the lawsuit by Innercept, among other things. The amount of damages which Plaintiffs have suffered is in excess of $75,000 and in an amount to be proven at the time of trial.

## FOURTH CAUSE OF ACTION

### VIOLATION OF THE IDAHO CONSUMER PROTECTION ACT, I.C. § 48-601, *ET SEQ.*

44.     Plaintiffs reallege Paragraphs 1 through 43 above as if fully restated herein.

45.     Plaintiffs allege that in order to induce Plaintiffs to enter into the contract for legal services with the Defendant, the Defendant represented to the Plaintiffs that the services which were to be provided to Plaintiffs would be quality legal services, in conformity with professional standards, and that the Defendant had attorneys at the firm that were properly licensed in Idaho and familiar with Idaho law who would provide legal services to Plaintiffs.

46.     Plaintiffs allege that Plaintiffs relied upon the representations made by the Defendant and based upon those representations, Plaintiffs entered into the contract for legal

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–10

services with the Defendant and ultimately paid the Defendant in excess of $200,000 for legal services.

47.     Plaintiffs allege that the representations made by the Defendant were untrue and that the Defendant did not provide Plaintiffs with quality legal services in conformity with professional standards, nor did the Defendant have an attorney at the firm that was properly licensed in Idaho.

48.     Plaintiffs allege that the Defendant knew, or in the exercise of due care should have known, that its conduct as described herein was unfair or deceptive in the conduct of trade or commerce, as provided in Idaho Code § 48-603, by the Defendant causing misrepresentations as to its certification by another, namely the Idaho State Bar; causing misrepresentations that the firm had approval, affiliations, qualifications, or licenses that they did not have; misrepresenting that the services to be provided were of a particular professional quality when they were not; and otherwise engaging in practices that were misleading, false, and deceptive to the Plaintiffs.

49.     Plaintiffs allege that as a direct and proximate result of the conduct described above, Plaintiffs have suffered damages, including but not limited to, additional attorneys' fees, costs, and time in defending against Innercept's lawsuit for trespass.

50.     Plaintiffs further allege that they have incurred attorneys' fees and costs to pursue this matter and allege that they are entitled to an award of reasonable attorneys' fees and costs incurred as provided in Idaho Code § 48-608(4).

51.     Plaintiffs further allege that the Defendant's conduct as described herein was oppressive, fraudulent, wanton, malicious, and outrageous against Plaintiffs' rights and the consequences that Plaintiffs might suffer and was a flagrant violation of the Idaho Consumer Protection Act.  Therefore, notice is hereby given that Plaintiffs intend to amend their pleadings

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–11

to include a prayer for relief seeking punitive damages in the manner allowed by Idaho Code §§ 6-1604 and 48-608(1).

### FIFTH CAUSE OF ACTION

### FRAUD

52.     Plaintiffs reallege Paragraphs 1 through 51 above as if fully restated herein.

53.     Plaintiffs allege that to induce Plaintiffs to enter into the contract for legal services with the Defendant and to pay Defendant for said legal services, the Defendant represented to Plaintiffs that Defendant had an attorney at the firm that was properly licensed in Idaho and familiar with Idaho law who would provide legal services to Plaintiffs in the sale of their business referenced herein.

54.     Plaintiffs allege that the representations made by Defendants as referenced in Paragraph 53 above were false when Defendant made these representations and that Defendant knew that said representations were false when Defendant made them and that Defendant intended that Plaintiffs act in reliance upon said false representations.

55.     Plaintiffs were unaware at the time that the representations made by Defendant as identified in Paragraph 53 above were false.

56.     Plaintiffs allege that the false representations made by Defendant as detailed in Paragraph 53 of this complaint were material and Plaintiffs justifiably relied upon the false representations when Plaintiffs entered the contract with Defendant and paid Defendant for legal advice and services provided by Defendant related to the sale of Plaintiffs' business. Plaintiffs allege that Plaintiffs would not have entered the contract with Defendant or paid any funds to Defendant for legal services had they known that Defendant did not have an attorney licensed in the State of Idaho and knowledgeable about Idaho law.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–12

57.     Plaintiffs allege that the Defendant knew, or in the exercise of due care should have known, that its conduct as described herein was unfair or deceptive in the conduct of trade or commerce, as provided in Idaho Code § 48-603, by the Defendant causing misrepresentations as to its certification by another, namely the Idaho State Bar; causing misrepresentations that the firm had approval, affiliations, qualifications, or licenses that it did not have; misrepresenting that the services to be provided were of a particular professional quality when they were not; and otherwise engaging in practices that were misleading, false, and deceptive to the Plaintiffs.

58.     Plaintiffs allege that as a direct and proximate result of the conduct described above, Plaintiffs have suffered damages in an amount in excess of $75,000 and in an amount to be proven at the time of trial.

59.     Plaintiffs further allege that they have incurred attorneys' fees and costs to pursue this matter and allege that they are entitled to an award of reasonable attorneys' fees costs incurred as provided in Idaho Code § 48-608(4).

60.     Plaintiffs further allege that the Defendant's conduct as described herein was oppressive, fraudulent, wanton, malicious, and outrageous against Plaintiffs' rights and the consequences that Plaintiffs might suffer and was a flagrant violation of the Idaho Consumer Protection Act. Therefore, notice is hereby given that Plaintiffs intend to amend their pleadings to include a prayer for relief seeking punitive damages in the manner allowed by Idaho Code §§ 6-1604 and 48-608(1).

## SIXTH CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY

61.     Plaintiffs reallege Paragraphs 1 through 60 as if fully restated herein.

62.     Plaintiffs allege that an attorney-client relationship was established with the Defendant, and as such, the Defendant owed the Plaintiffs fiduciary duties, including the duty of loyalty, the duty of care, and the duty to at all times act in the best interest of the Plaintiffs.

63.     The Defendant breached these fiduciary duties to the Plaintiffs by making misrepresentations to the Plaintiffs about the quality of legal services to be performed and by deceiving the Plaintiffs that the Defendant had an attorney that was properly licensed in Idaho.

64.     Plaintiffs allege that the Defendant's above-described breach of its fiduciary duties was clear, knowing, and willful.

65.     Plaintiffs allege that the forfeiture of all of the attorneys' fees that Plaintiffs paid to Defendant for legal representation is the appropriate equitable remedy for the above-described breaches of the Defendant's fiduciary duties to the Plaintiffs.

66.     Plaintiffs further allege that the Defendant's conduct as described herein was oppressive, fraudulent, wanton, malicious, and outrageous against Plaintiffs' rights and the consequences that Plaintiffs might suffer.  Therefore, notice is hereby given that Plaintiffs intend to amend their pleadings to include a prayer for relief seeking punitive damages in the manner allowed by Idaho Code §§ 6-1604.

## SEVENTH CAUSE OF ACTION

## DISGORGEMENT/UNJUST ENRICHMENT

67.     Plaintiffs reallege Paragraphs 1 through 66 as if fully restated herein.

68.     Plaintiffs allege that the Defendant engaged in an illegal and wrongful act, in violation of Idaho Code § 3-420, by engaging in the unauthorized and unlawful practice of law in the state of Idaho without a license to do so.

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–14

69.     Unknowingly, Plaintiffs paid to Defendant money for legal services which constitutes the unauthorized and unlawful practice of law in the State of Idaho without a license to do so.

70.     Defendant accepted the payment of money from Plaintiffs for legal services which constitutes the unauthorized and unlawful practice of law in the State of Idaho without a license to do so.

71.     Plaintiffs allege that Plaintiffs have suffered harm and incurred damages as a result of the Defendant's unlawful practice of law in Idaho without a license to do so. Plaintiffs allege that it would be inequitable and unjust for Defendant to retain the money it received without compensation to Plaintiffs.

72.     Plaintiffs allege that disgorgement of all fees paid to the Defendant by the Plaintiffs is the appropriate remedy for the Defendant's above-described illegal and wrongful act.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFFS PRAY FOR A JUDGMENT AND DECREE AS FOLLOWS:

1.     For a judgment against the Defendant in a sum in excess of $75,000.00 and in an amount to be proven at the time of trial.

2.     For a judgment against the Defendant ordering the disgorgement of all fees paid to the Defendant by the Plaintiffs.

3.     For Plaintiffs' reasonable attorneys' fees and costs incurred in the sum of $25,000 as against the Defendant, pursuant to Idaho Code § 12-120(3) and/or Idaho Code § 48-608(4) if judgment is taken by default, or in the event of contest, as set by the Court.

4.     For an order enjoining the use or employment of the methods, acts, and practices described in this Complaint and for such other relief which this Court deems just and necessary pursuant to Idaho Code § 48-608(4).

DATED this $\underline{11}$ day of January, 2023.

WITHERSPOON BRAJCICH MCPHEE, PLLC

Mark A. Ellingsen
*Attorneys for Plaintiffs*

PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL–16

# Exhibit A



**PARR BROWN**
**GEE & LOVELESS**

ATTORNEYS AT LAW          dwaddoups@parrbrown.com

**Douglas C. Waddoups**
Attorney at Law

April 17, 2019

**Via email:** _pursuingintention@gmail.com_

George and Jami Ullrich
P.O. Box 1356
Coeur d'Alene, ID  83816

  *Re:*  *Representation by Parr Brown Gee & Loveless*

Dear George and Jami:

  Thank you for choosing Parr Brown Gee & Loveless (the "Firm") to serve as legal counsel for you (the "Client") in assisting with general business matters.  We look forward to working with you.

  I have enclosed a copy of the Firm's Terms and Conditions of Engagement for Legal Services (the "Engagement Terms"), which is incorporated herein by this reference.   The Engagement Terms explain the Firm's policies and practices for billing, retainer, privacy, and other important issues that will govern the relationship between the Firm and you as the client during our current representation and any additional engagements we accept.  If you have any questions or concerns about the Engagement Terms, please do not hesitate to let me know.

  While hourly rates for attorneys and paralegal staff are adjusted from time-to-time, my current hourly rate is $390.00.  The Firm will send a statement of professional fees, costs, and expenses to your attention on a monthly basis, payment of which is due upon receipt.  The policies and practices of the Firm for billing, staffing, and expenses are further explained in the Engagement Terms.

  We have completed a conflicts check and are unaware of any actual or potential conflict of interest associated with our representation.  If a conflict is identified by you or by us in the future, the Engagement Terms provide for the manner in which it will be resolved.

  It is important that you are satisfied with our services and responsiveness at all times.  We intend to provide quality legal services in an efficient, economical manner.  I encourage you to bring to my attention any questions or concerns you may have concerning our service, policies, or fees.

  Please acknowledge your agreement to the terms of our engagement as set forth in this letter and the Engagement Terms by executing this letter in the space below and returning it to me.  I encourage you to keep a copy for your records.  I look forward to working with you on this matter.

        Very truly yours,

        Douglas C. Waddoups

APPROVED AND ACCEPTED
this 21ˢᵗ day of April, 2019

_____
George Ullrich

_____
Jami Ullrich

4819-8658-9588
Parr Brown Gee & Loveless, A Professional Corporation
101 South 200 East Street, Suite 700, Salt Lake City, UT 84111
T 801.532.7840   F 801.532.7750   www.parrbrown.com



# TERMS AND CONDITIONS OF ENGAGEMENT FOR LEGAL SERVICES

**Scope of Representation.** Your engagement of Parr Brown Gee & Loveless (the "Firm") includes the scope of work identified in the initial letter ("Engagement Letter") sent with these Terms and Conditions of Engagement for Legal Services ("Engagement Terms") and the Engagement Terms, and does not include any work on other future legal matters unless the Firm later undertakes in writing to provide such additional representation. Nevertheless, these Engagement Terms shall apply to any such future work performed for you unless otherwise agreed to. If you are a corporation, partnership, limited liability company, trust, estate, or other entity, the engagement does not include representation of your shareholders, partners, members, affiliates, directors, managers, officers, employees, or beneficiaries except as may be specifically set forth in writing.

**Client Cooperation.** You agree to cooperate fully with the Firm in all matters relating to the representation of you, to fully and accurately disclose to the Firm all facts that may be relevant to the subject matter of the representation or that the Firm may otherwise request, and to keep the Firm apprised of developments relating to the representation. The Firm is entitled to be paid for all services rendered and costs and expenses paid or incurred on your behalf up to the date of termination or withdrawal of our representation.

**Joint Representation.** When two or more clients seek joint representation, the Firm recommends that each client consult with other counsel of the client's choosing about the potential effects of joint representation. At a minimum, the following implications should be considered:
The nature of the Firm's engagement will require us to disclose to each client all information arising in the course of our joint representation of additional clients, regardless of the source. Thus, there is no entitlement to confidentiality and no attorney-client privilege for communications between the firm and any jointly represented client vis-à-vis other jointly represented clients. That means that even private communications from any jointly represented client to the Firm may be disclosed to the other clients in the joint representation and also may be subject to disclosure in a legal proceeding involving any dispute between such clients. If one jointly represented client asks the Firm to withhold information from another jointly represented client, we may refuse or have to withdraw from representing one or both clients.

Although the interests of jointly represented clients may initially be identical in all material

respects, it is possible that circumstances or views could change, or issues could arise, that cause a conflict or other divergence of interests among jointly represented clients. If that occurs in this matter, and such clients cannot amicably resolve the disagreement, the Firm may need to withdraw, with the result that one or both such clients may be required to obtain new counsel.

The Firm's advice with respect to the legal issues that arise during the course of a joint representation will be directed toward balancing and accommodating the respective interests of all jointly represented clients. However, there is no guarantee that compliance with the Firm's advice will actually be in the separate best interests of each client.

**Representation of Entities.** If you are a corporation, partnership, limited liability company, trust, estate, or other entity, the Firm will respond to the instructions of the officers, directors, managers, partners, trustee, executor, or other persons designated by you or whom the Firm believes to be the duly authorized representatives of you. The Firm has no independent obligation to verify such authority.

**Conflicts of Interest.** If you are or become aware of any facts that suggest the existence of a conflict of interest, you agree to call them to the attention of the Firm immediately. If the Firm determines in the future that an insurmountable conflict of interest exists, the Firm may be precluded from continued representation of you, and it reserves the right to withdraw from the representation in that event. Should that circumstance occur for any reason, the Firm may be able to assist you with obtaining new counsel.

**Privacy.** As a client of the Firm, you should know that all information that we receive from you is held in confidence and is not released to people outside the Firm, except as agreed to by you or as required by applicable law. In the course of providing our clients with taxation and other financial advice, we receive personal financial information: (1) about our clients, and (2) about our clients' transactions with third parties. In order to safeguard such nonpublic personal information, the Firm has established security and confidentiality practices and procedures that comply with the Firm's professional standards.

**Billing Records and Invoices.** All attorneys and paralegals of the Firm have assigned hourly rates, which rates are reflected on the Firm's monthly invoices. Hourly rates are adjusted from time to time (generally once a year) and can change during the course of an engagement. Changes in rates will be reflected on the Firm's monthly invoices.

**Staffing.** There may be times when it becomes cost effective or necessary to use the assistance of attorneys or paralegals employed by the Firm who may not be initially identified at the outset of the engagement. Services by such attorneys and paralegals will be billed at the Firm's standard hourly rates as they may be adjusted from time to time. The Firm retains the right to staff any particular matter as it sees fit and consistent with your best interests as the client.

**Co-Counsel.** The Firm may, as appropriate, retain co-counsel to assist with the performance of the Firm's work. The Firm will obtain your consent prior to the involvement of co-counsel.

**Retainer.** The amount and terms of the retainer arrangement are determined in consultation with the billing attorney. The retainer will be applied to the final invoice. Occasionally, it may be appropriate to require a retainer after the commencement of the engagement, or to require an increase in the amount of the original retainer, depending on payment history, changed circumstances, or the scope of work. In the event any interim statement for services remains unpaid for a period in excess of sixty (60) days, the Firm may apply the retainer to the unpaid balance, but the original retainer must be restored immediately.

**Advances.** In some circumstances, in addition to or in lieu of a retainer, the Firm may require a monetary advance prior to work being performed by the Firm. Advances will be applied to pay for subsequent work performed. Once the advance is exhausted, the Firm may request a further advance to pay for additional work performed by the Firm. The Firm also customarily requests an advance for the purpose of paying substantial out-of-pocket costs we incur on your behalf.

**Expenses and Costs.** During the course of providing services, the Firm may incur certain costs and expenses, such as printing, photocopying, document processing, database management, postage, online legal research, deposition fees, court costs, filing fees, expert and non-expert witness fees, travel, and lodging. You agree to reimburse the Firm for such costs or expenses incurred, which will be included on the Firm's monthly invoices.

**Late Payment and Interest.** Invoices for legal services performed and costs incurred are due

upon receipt. A finance charge of twelve percent (12%) per annum will accrue on any amount not paid within thirty (30) days after the date of the invoice.

**Budgets and Forecasts.** Any estimates, budgets, or forecasts of anticipated fees or costs that may be provided at your request or otherwise are, due to the uncertainties involved, necessarily only an approximation. Under no circumstances are such estimates a maximum or minimum fee or cost quotation. Our actual fees and costs will be determined in accordance with the policies described herein.

**Insurance.** You will identify and provide the Firm with a copy of any policy of insurance that might provide coverage for your legal fees or costs or for any judgment that may be awarded against you in connection with the matter identified in the Engagement Letter or the subject matter of any additional engagement. To the extent that you or any associated entity has a policy of insurance that may provide such coverage, immediately give written notice of the matter to any such insurance carrier(s) at the address(es) indicated in any such policy(ies). The failure to timely notify the insurance carrier(s) may compromise your rights under the policy(ies). For example, many insurance carriers will not pay for expenses, such as attorneys' fees and costs, that are incurred before the insurance carrier is notified. Please let us know if you need any assistance with notifying any applicable carriers. If the Firm does not receive a copy of any policy, we will proceed with the understanding that no insurance coverage exists.

**No Assurance of Results.** The outcome of any legal matter is subject to inherent risks, factors, and uncertainties beyond the Firm's control. Therefore, the Firm has not made, and cannot make, any guarantees or promises concerning the outcome of any legal matter.

**Document Preservation.** If this engagement involves litigation, a threat of litigation, or reasonably anticipated litigation, you have a legal obligation to identify and preserve materials that may relate to the subject matter of such litigation. Courts have issued decisions regarding the duty to retain documents, including electronically stored information that may be discoverable in litigation. Significant penalties or sanctions can apply to parties who do not meet their preservation obligations, which could have a significant adverse impact on your rights in the case. Please retain all documents and information concerning the litigation, including electronic information, such as emails, text messages, voicemails, calendars, and other similar information. Immediately stop any routine deletions or destruction of data or documents, whether pursuant to your regular policy or otherwise. Contact the Firm for advice about arranging for back-up of electronic data or documents. Preserve all records of former employees or personnel that are in your possession, custody, or control. Please also run a complete backup of all computer programs that contain any information related to the subject matter of the litigation.

**Standards of Professionalism and Civility.** Utah has adopted written Standards of Professionalism and Civility that govern the conduct of lawyers. The Firm adheres to such standards and reserves the right to grant accommodations to other counsel in all matters not affecting the merits of the case or prejudicing your rights.

**Termination by Client.** You have the right, at any time, to terminate the services of and representation by the Firm, for any reason, upon written notice. You agree that you will remain obligated to pay for all services rendered and costs or expenses advanced or incurred by the Firm on your behalf up through the date of termination.

**Termination by Firm.** The Firm has the right to withdraw from its representation of you if, among other things, you fail to cooperate or follow the Firm's advice on a material matter, or if any fact or circumstance comes to the Firm's attention that would, in the Firm's view, render continuing representation unlawful or unethical.

**Client Documents.** Upon termination of our representation of you, the papers or property you have provided to the Firm, will, at your request, be returned promptly. The Firm's drafts and work product belong to the Firm. You are not entitled to the work product of the Firm, such as investigative reports, expert reports, or other legal work product, unless the Firm agrees and any costs associated with those items have been paid. Subject to applicable laws, duties, and rules of professional responsibility, the Firm retains the right to destroy items described in this paragraph within a reasonable time, but in any event the Firm will not retain such documents for more than five (5) years after the conclusion of the Firm's representation of you in any particular engagement.

**Sunset Provision.**  In the event that the Firm has not performed work for you or otherwise been contacted by you with respect to providing legal services for a reasonable period of time, but in no event greater than two (2) years, the Firm's professional services and engagement by you shall be deemed terminated.

4826-0311-8475, v. 1
Parr Brown Gee & Loveless, A Professional Corporation
101 South 200 East Street, Suite 700, Salt Lake City, UT 84111
T 801.532.7840   F  801.532.7750   www.parrbrown.com

